IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JOHN HARPER and FARA HARPER, | ) |
| Plaintiffs, | ) |
| | ) Case No.: |
| v. | ) |
| ST. JOHN'S HOSPITAL OF THE HOSPITAL SISTERS OF THE THIRD ORDER OF ST. FRANCIS, | ) **Plaintiffs Demand Trial by Jury** |
| Defendant. | ) |

## COMPLAINT

Plaintiffs John Harper and Fara Harper, by their attorneys, Jennifer Sender and Andrés J. Gallegos of Robbins Salomon & Patt, Ltd., for their Complaint against Defendant St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis ("St. John's," or the "Defendant"), an Illinois not-for-profit corporation, state as follows:

### JURISDICTION AND VENUE

1.  This court has subject matter jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1331 as the Plaintiffs' claims alleged herein arise under Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116. Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

2.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). All of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## THE PARTIES

3. Plaintiff John Harper ("John"), is a 38-year old male, and is profoundly deaf. He was born deaf. John's primary means of communication is through American Sign Language ("ASL") In stressful situations, he is not comfortable communicating through written English. He cannot lip read. He has no familiarity with medical terminology. He is a person with a disability within the meaning of all applicable statutes. John resides with wife, Fara, and their children, in Murrayville, Illinois.

4. Plaintiff Fara Harper ("Fara"), is a 37-year-old female, and is profoundly deaf. She was born deaf. Fara's primary means of communication is through ASL. She is not comfortable communicating through written English with doctors. She has no familiarity with medical terminology. She is a person with a disability within the meaning of all applicable statutes. Fara resides with her husband, John, and their children, in Murrayville, Illinois.

5. St. John's is an Illinois not-for-profit corporation and is a regional medical center located in Springfield, Illinois, which serves the central and southern Illinois area. St. John's operates an Emergency Department in its hospital, which is one of many St. John's medical facilities and clinics on its Springfield campus. St. John's is the flagship hospital of Hospital Sisters Health System (HSHS).

6. Three of the Harpers' children have required medical treatment at St. John's on numerous occasions due to injury or illness. The hospital is approximately 47 miles from Murraysville and is the closest hospital to them with emergency pediatric care.

## DEFENDANT'S CONDUCT

7. The deaf community struggles with significant health disparities and is often excluded from health surveillances, outreach programs and mass media healthcare messages. Deaf users of ASL, through cultural and language barriers, are at high risk for poor health knowledge and inequitable access to medical care in our health system. These barriers directly translate to inadequate assessment, limited access to treatment, insufficient follow-up and poorer outcomes. For example, as compared with the hearing population, for the deaf population there are lower rates of individuals accessing preventative services, worse cardiovascular health outcomes and higher rates of diabetes and obesity.[1] ASL is the primary language for many people who are deaf; however, interpreters are often not provided during medical visits, even when such medical visits are not for themselves, but for their minor children, as is the case here.

8. St. John's has failed to provide Plaintiffs with auxiliary aids and services to allow them to effectively communicate with St. John's medical and nursing staff during numerous vital encounters in connection with the Harpers' then 8-year old son's emergency room visit to St. John's on February 12, 2017, which did not allow them to participate in their son's care. By failing to provide auxiliary aids and services to the Plaintiffs, St. John's jeopardized the health and well-being of the Harpers' minor son.

9. Likewise, St. John's has failed to provide Plaintiffs with auxiliary aids and services to allow them to effectively communicate with St. John's medical and nursing staff during numerous vital encounters in connection with the Harpers' then 6-year old son's emergency room visit to St. John's on March 4, 2017, which did not allow them to participate in

---

[1] *See* Schoenborn, M.P.H., et al., Health Disparities Among Adults with Hearing Loss: United States, 2000 – 2006, Center for Disease Control and Prevention, Health E-Stats. Available at: http://www.cdc.gov/nchs/data/hestat/hearing00-06/hearing00-06.htm

their son's care. By failing to provide auxiliary aids and services to the Plaintiffs, St. John's jeopardized the health and well-being of the Harpers' minor son.

10. Defendant acted intentionally and with deliberate indifference when it failed to provide the benefit of its services to Plaintiffs and failed to provide appropriate auxiliary aids and services to Plaintiffs to effectively communicate during numerous vital encounters with Defendant's doctors and nurses while their sons visited St. John's emergency room in February and March 2017.

11. As a Medicare and Medicaid provider, St. John's is a recipient of federal funds within the meaning of the Rehabilitation Act. For the fiscal year ending 2016, approximately 72% of St. John's inpatient patients were Medicaid and Medicare recipients, and approximately 60% of all outpatient patients were Medicaid and Medicare recipients.[2]

## EXPERIENCES OF THE PLAINTIFFS

12. On February 12, 2017, John and Fara rushed their eight-year-old son to the Hospital's emergency room for treatment of a possible elbow dislocation that occurred during his participation in a wrestling tournament. Upon arrival to the emergency room, John and Fara, in writing, informed the emergency room staff they were deaf and requested a sign language interpreter. A nurse informed them that the Hospital did not have an on-site interpreter and made no arrangements to provide one. . The nurse then asked if the Harpers' nine-year-old hearing daughter could interpret for them. The Harpers refused.

---

[2] Illinois Hospital Report Card and Consumer Guide to Healthcare, Illinois Department of Public Health. Available at: http://www.healthcarereportcard.illinois.gov/hospitals/view/101177 (26.33% and 45.15% of St. John's inpatients were Medicaid and Medicare recipients, respectively; and 27.95% and 32.13% of St. John's outpatients were Medicaid and Medicare recipients, respectively).

13. Finally, the Hospital provided video remote interpreting (VRI). The wireless connection necessary for operation of the VRI was poor, so transmission was delayed, the picture was blurry, and as a result, it was not effective for John and Fara. Furthermore, John and Fara were not able to utilize the VRI equipment together to communicate with the interpreter, because the screen was too small and was only able to be used by one person at a time. In addition, there were multiple medical staff attending to the Harpers' son, making it difficult for the interpreter to interpret all of what was being said. To further complicate the situation, the nurses kept turning off the VRI when they left the room, requiring staff entering the room to have to restart the connection, which delayed the communication.

14. John and Fara were unable to communicate effectively with doctors, nurses, and other Hospital employees during the two hours their son was in the emergency room. They did not understand what the treaters were telling them, and they could not ask questions in order to understand. When they left the Hospital, they had no clear understanding of their son's diagnosis or prognosis. The Harpers were confused and distraught.

15. Following this experience, Fara wrote a letter of complaint to the Hospital regarding its lack auxiliary aids and services to achieve effective communication.

16. On March 4, 2017, John and Fara rushed their six-year-old son to the Hospital's emergency room, at approximately 10:30 P.M., as he had blood in his urine, requiring a cystoscopy. At approximately 9:30 P.M., one hour before the Harpers arrived at the Hospital, John's father called the Hospital as the family was enroute and requested the availability of an on-site sign language interpreter for them.

17. Upon their arrival to the emergency room, , there was no on-site interpreter available, and the Harpers again requested an on-site interpreter. The Hospital staff offered VRI, but the Harpers refused based on their prior unsuccessful attempt to use it two weeks prior. The Hospital staff did not have any information available to contact any ASL interpreters. The Hospital staff only had a contact information for an ASL interpreting referral service which was no longer in service. Fortunately, the contact had a sister who was a licensed ASL interpreter who was available to assist. The Hospital's call for the interpreter occurred at approximately 11:30 P.M., two hours after they were notified of the need for an interpreter by John's father and one hour after the Harpers arrived at the ER.

18. The interpreter finally arrived at 1:00 A.M. However, until that interpreter arrived, John and Fara did not know what was taking place with their son without the ability to communicate with his doctors and nurses. While waiting for the interpreter, one of the Hospital's staff members attempted to interpret for them. The Harpers noticed that the staff member had "mediocre" signing skills and asked if he was a licensed interpreter. The staff member did not understand the word "licensed" in sign language. They insisted he stop attempting to interpret for them. The licensed interpreter stayed for approximately 3 hours.

19. After the licensed interpreter left, John and Fara again had no one to interpret for their meetings with the doctors and staff, including post-operative meetings and discharge planning and instruction meetings.

## COUNT I
### Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 704

20. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a). The Plaintiffs' claims in Count I arise under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, Public Law 93-112, 87 Stat. 355, as amended.

21. Plaintiffs incorporate by reference the paragraphs in the preceding sections.

22. At all relevant times herein, Defendant received federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and is therefore subject to the anti-discrimination provisions of the Rehabilitation Act, as herein described.

23. At all times relevant herein, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, and its implementing regulations, 45 C.F.R. § 84.4(a). The Section 504 implementing regulation provides that "[n]o qualified handicapped person shall, on the basis of handicap be excluded from participation in, be denied the benefits of or otherwise be subjected to discrimination under any program or activity which receives or benefits from Federal financial assistance." 45 C.F.R. § 84.4(a).

   A. The regulation further provides:

   "A recipient, in providing any aid, benefit, or service, may not, ... on the basis of handicap: (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others ..."

   45 C.F.R. § 84.4(b)(1) (ii).

   B. Elsewhere, the Section 504 regulation states:

   "In providing health, welfare or other social services or benefits, a recipient may not on the basis of handicap: ... (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered non-handicapped persons.

7

45 C.F.R. § 84.52(a)(2).

C. In addition, "[a] recipient hospital that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care." 45 C.F.R. § 84.52(c).

D. The regulation further provides:

> "A recipient to which the subject applies that employs 15 or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."

45 C.F.R. § 84.52(d)(l).

E. The regulation provides that such "auxiliary aids may include interpreters… and other aids for persons with impaired hearing… 45 C.F.R. § 84.52(d)(3).

F. The Section 504 regulation defines a person who has a disability as any person who:

> "(i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

45 C.F.R. § 84.3(j)(l)(i)-(iii).

G. A qualified person with a disability, with respect to the provision of health, welfare and social services, is a person "who meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(k)(4).

24. Through the acts and omissions alleged herein, St. John's has, solely on the basis of Plaintiffs' disabilities, excluded Plaintiffs from participating in its services, denied Plaintiffs the benefit of its services, denied Plaintiffs the opportunity to participate in their sons'

healthcare, and subjected Plaintiffs to discrimination in violation of 29 U.S.C. § 794. *et seq.*, and the regulations promulgated thereunder, and have resulted in injury to Plaintiffs.

25. St. John's acts and omissions alleged herein violated the Rehabilitation Act and its implementing regulations in one or more or all of the following manners:

   A. Defendant has discriminated against the Plaintiffs by denying them the opportunity for the full and equal enjoyment of the services, privileges, advantages, or accommodations of the facilities owned, operated and/or contracted for use by Defendant.

   B. Defendant has discriminated against the Plaintiffs by denying them the opportunity to participate in or benefit from the services, facilities, privileges, advantages, or accommodations of Defendant's facilities.

   C. Defendant has discriminated against the Plaintiffs by offering or affording them services that are not equal to those services afforded to other individuals without hearing impairments.

   D. Defendant discriminated against Plaintiffs by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its services to Plaintiffs where such modifications would not fundamentally alter the nature of its services.

   E. Defendant has discriminated against the Plaintiffs by failing to establish a procedure for effective communication with Plaintiffs for the purpose of providing health care.

   F. Defendant has discriminated against the Plaintiffs by deliberately and intentionally failing to provide Plaintiffs appropriate auxiliary aids and services, such as an on-site sign language interpreter or effective video remote interpreting services, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in undue burden, despite knowing the failure to do so would likely result in harm to the Plaintiffs' federally protected rights and failed to act upon that likelihood.

   G. Defendant has otherwise discriminated against the Plaintiffs.

26. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the

Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

27. As a proximate result of Defendant's violations of Section 504, St. John's has inflicted injury and damages upon the Plaintiffs, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

28. Plaintiffs are entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794(a), as Defendant's conduct has inflicted injury and damages upon Plaintiffs, including loss of a civil right, mental anguish, and mental pain and suffering.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A. An order enjoining Defendant from discriminating against the Plaintiffs, requiring Defendant to (i) enforce its communication access policy (i) make available to Plaintiffs an array of auxiliary aids and services, which are operational; and (ii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services, and interacting with persons who are deaf;

B. An award of compensatory monetary damages;

C. An award of attorneys' fees and costs; and

D. Such other relief as the Court deems just.

**COUNT II**
**Violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116**

29. Plaintiffs incorporate by reference paragraphs in the preceding sections.

30. Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.*, Pub.L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination based on race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services.

31. As Defendant participates in Medicare and Medicaid, it is a covered entity subject to compliance with Section 1557.

32. The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1). Those regulations, in pertinent part, require covered entities to:

    A. Take appropriate initial and continuing steps to notify beneficiaries, enrollees, applicants and members of the public:

        (1) that the covered entity does not discriminate on the basis of race, color, national origin, sex, age, or disability in its healthcare programs or activities. 45 C.F.R. §92.8 (a)(1);

        (2) that the covered entity provides appropriate auxiliary aids and services, including qualified interpreters for individuals with disabilities and information in alternate formats, free of charge and in a timely manner, when such aids and services are necessary to ensure an equal opportunity to participate to individuals with disabilities. 45 C.F.R. §92.8 (a)(2);

        (3) how to obtain aids and services. 45 C.F.R. §92.8 (a)(4);

        (4) the identification of, and contact information for, the responsible employee designated to be responsible for adoption of grievance procedures. 45 C.F.R. §92.8 (a)(5);

  (5)  the availability of grievance procedures and how to file a grievance pursuant to §92.7(b). 45 C.F.R. §92.8 (a)(6); and

  (6)  how to file a discrimination complaint with the Department of Health and Human Services Office of Civil Rights. 45 C.F.R. §92.8 (a)(7).

 B. That a covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28 C.F.R. §§ 35.160 through 35.164 are the communication access standards required of public entities under Title II of the ADA. Where those regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. *See* 45 C.F.R. § 92.202(a). As applied to Section 1557 covered entities, the Title II regulations require them to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, a covered entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, … companions, … an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a [covered] entity," 28 C.F.R. § 35.160(b)(1); and "[i]n determining what types of auxiliary aids and services are necessary, a [covered] entity shall give *primary consideration* to the requests of individuals with disabilities …." 28 C.F.R. § 35.160(b)(2) (emphasis added).

 33. Defendant had a duty under Section 1557 to give primary consideration to Plaintiffs' communication preference and provide them with an ASL interpreter.

 34. Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that communications with Plaintiffs were as effective as communications with others in its healthcare services, and

Defendant failed to meet what Defendant was legally required to do under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

35. Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

36. Defendant's conduct constituted violations of Section 1557.

37. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

38. Plaintiffs are entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A. An order enjoining Defendant from discriminating against the Plaintiffs, requiring Defendant to (i) enforce its communication access policy; (ii) make available to Plaintiffs an array of auxiliary aids and services which are operational; and (iii) provide its appropriate employees training on its communication access policy, the proper utilization of auxiliary aids and services, and interacting with persons who are deaf;

B. An award of compensatory monetary damages;

C. An award of attorneys' fees and costs; and

D. Such other relief as the Court deems just.

**Plaintiffs Demand Trial by Jury.**

Dated: February 6, 2019               John Harper and Fara Harper, Plaintiffs.

/s/ Jennifer M. Sender
_____
One of Their Attorneys

Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Attorneys for Plaintiffs
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com
#3054687